ST. LOUIS UNION TRUST COMPANY, a Corporation, and ALICE H. VON SCHRADER, Appellants, v. MARY ARABELLA FRANCES BASSETT, ELOISE HOBLITZELLE, MARGRATE OLIVIA VON SCHRADER, FREDERICK WILLIAM VON SCHRADER, III, MARY ELOISE VON SCHRADER, GEORGE W. LUBKE, as Executor Under the Will of ELOISE VON SCHRADER, GEORGE W. LUBKE, as Trustee Under the Will of ELOISE VON SCHRADER, JULIA HODGSON, OTTO U. VON SCHRADER, MARY H. VON SCHRADER, His Wife, HENRIETTA VON SCHRADER BASSETT, PRENTISS PECK BASSETT, Her Husband, FREDERICK WILLIAM VON SCHRADER, II, ANNE VON SCHRADER, His Wife, ALLEYNE VON SCHRADER, IRENE BOND VON SCHRADER, His Wife, and NELLIE CLARK.—85 S. W. (2d) 569.

Division One, July 30, 1935.

*Taylor, Chasnoff & Willson, Alex. R. A. Garesche* and *James V. Frank* for appellants.

*John R. Green, Green, Henry & Remmers* and *Harry C. Lamberton* for Henrietta Von Schrader Bassett.

*Marion C. Early* for Otto U. and Mary H. Von Schrader.

*Alvan J. Goodbar, Thomas P. Moore* and *Walter Wehrle* for other respondents.

608

PER CURIAM:—This is a suit to partition certain real property in St. Louis County, Missouri, and in the city of St. Louis, Missouri, and to partition certain personal property. The right to partition depends upon the construction of the will of Eloise Von Schrader, deceased.

The cause was originally filed by George M. Von Schrader, who thereafter died, and the cause was revived in the name of St. Louis Union Trust Company, executor under the will of the original plaintiff, and Alice H. Von Schrader, the widow and sole devisee under the will of the original plaintiff, was joined as plaintiff.

After the cause was revived an amended petition was filed. Defendants, Otto U. Von Schrader and Mary H. Von Schrader, his wife, filed separate answers admitting the allegations in the amended petition. Defendants, Frederick William Von Schrader, III, Margrate Olivia Von Schrader, Mary Arabella Frances Bassett, Mary Eloise Von Schrader and Eloise Hoblitzelle, minors, by their respective guardians ad litem, filed general demurrers to the petition. Defendants, Frederick William Von Schrader, II, and Anne Von Schrader, his wife, filed general demurrer, and defendant George W. Lubke, executor and trustee under the will of testatrix, filed general demurrer. It seems that no pleading was filed for other defendants except Julia Hodgson. It is stated that she filed answer admitting the allegations in the petition, but this answer does not appear in the record. It does not appear that defendant, Henrietta Von Schrader Bassett filed answer, but she filed here separate brief supporting plaintiffs. However, it is only the petition and demurrers that are of consequence here. The separate demurrers were sus-

tained, plaintiffs refused to plead further and the petition was dismissed and plaintiffs appealed.

The amended petition is in two counts and the first count thereof alleges the filing of the original petition by George M. Von Schrader on July 30, 1930, and his death on November 5, 1931, the revival of the cause in the name of the present plaintiffs, the naming of St. Louis Union Trust Company as the executor under the will of George M. Von Schrader, deceased, the probate of his will and the designation of plaintiff, Alice H. Von Schrader as the sole devisee under the will of her husband, George M. Von Schrader. It is further alleged that Eloise Von Schrader whose will is here involved, was single and a resident of St. Louis County, Missouri; that she executed her will on April 4, 1928, and died on May 17, 1928; that the defendant, George W. Lubke, was executor and trustee under the will of testatrix and was granted letters as such by the Probate Court of St. Louis County on May 25, 1928. It is further alleged that Eloise Von Schrader left surviving as her only heirs at law, defendant, Julia Hodgson, a sister; George M. Von Schrader, a brother (deceased at time of filing amended petition); defendant Otto U. Von Schrader, a brother; and defendants, Henrietta Von Schrader Bassett, Frederick William Von Schrader, II, and Alleyne Von Schrader, children of a deceased brother.

The will is set out in full in the petition and it appears that in the first, second and third clauses, testatrix made certain specific bequests which are not here involved. It is pleaded that the residuary clause violates the rule against perpetuities and is void, and that therefore, the property bequeathed and devised by this clause is subject to partition among the heirs at law of the testatrix as tenants in common. The demurrers are bottomed on the theory that the residuary clause does not violate the rule against perpetuities and that the will makes disposition of the property sought to be partitioned, hence nothing to partition, and that, therefore, the petition fails to state a cause of action. There is no claim that any obstacle bars partition except the will of the testatrix.

The fourth or residuary clause is as follows: "Fourth. All the rest and residue of my estate, real, personal and mixed and wherever situated and also the fund of Nine Thousand Dollars now held by the St. Louis Union Trust Company as trustee, for my use and benefit, pursuant to the decree of the Circuit Court of the County of St. Louis, entered in Cause No. 23,620 therein, in accordance with the will of my late father, Frederick Von Schrader, which fund I am given power by the will of my said father and by said decree, to direct to what person or persons said fund shall be conveyed after my death, I give, devise and bequeath to George W. Lubke of the city of St. Louis, to have and to hold the same to him and his suc-

cessors, in trust, however, for the following purposes and with the following powers, namely: Said trustee and his successor and successors in trust shall have full power and authority to receive, take, collect, receipt for and hold said property devised and bequeathed hereby in trust, and to compromise, adjust and settle all claims to or against said property, at such amounts and upon such terms of payment as to said trustee shall seem best and to invest and reinvest the property of said trust estate, convert real estate into personalty and personalty into real estate; to sell or for such time as he shall deem for the best interests of my said estate to retain unsold, any stock, bonds or securities; to make alterations of, repairs upon, additions to and to erect improvements upon real estate, and to sell, join in or make partition of any real estate and convey the same, to lease or otherwise dispose of real estate, and to create or grant easements with respect to real estate and to make or vacate plats or subdivisions of real estate (in any case the purchaser from the trustee shall not be bound to see to the application of the purchase money), and to make leases of any real estate for such terms as the trustee may deem advisable, the trustee being given express power to make a lease for a term that may extend beyond the term of the trusts hereof, if such course shall to him seem advisable, provided, however, that said trustee shall not sell within the period of five years after my death the tract of 34.506 acres in U. S. Survey No. 1947 in said County of St. Louis, upon which I now reside, and being lot 2 of the subdivision in partition of the Von Schrader Estate in said Cause No. 23,620 of the Circuit Court of said County of St. Louis.

"Out of the gross income from said property said trustee shall pay the taxes of all kinds, necessary repairs, premiums for procuring insurance of such kinds as the trustee may place and any other necessary expenses of administration and the net income remaining said trustee shall distribute as follows:

"To my cousin, Nellie Clark, he shall pay out of such income the sum of twenty-five dollars per month for and during her natural life, the first payment to be made within thirty days after said trustee shall receive my said property.

"Said net income remaining after said payment to my said cousin, Nellie Clark, and remaining after her death said trustee shall distribute as follows:

"(a) He shall pay one-fifth thereof to my niece, Henrietta Von Schrader Bassett, for and during her natural life and upon her death shall pay the same to her daughter, Mary Arabella Frances Bassett, until she attains the age of forty years, provided that, in the event said Mary Arabella Frances Bassett shall not have attained the age of twenty-one years at the time of the death of her

mother, said trustee shall expend said income for her support, maintenance and education until she shall attain the age of twenty-one years. Should said Mary Arabella Frances Bassett die before her mother or before attaining the age of forty years and leave surviving her no lawfully natural born children, then upon the death of her mother or her death said trustee shall pay the share of said net income theretofore paid to her mother or to her to the beneficiaries of this trust named in the following paragraph (b) of this will in equal parts, share and share alike. Should said Mary Arabella Frances Bassett die before attaining the age of forty years and leave surviving her lawfully natural born children, then said trustee shall expend said part of said income for the support, maintenance and education of her said children after her death or the death of her said mother until the youngest of the beneficiaries named in the following paragraph (b) of this will surviving shall attain the age of forty years.

"(b) The other four-fifths of said net income said trustee shall expend for the support, maintenance and education of Margrate Olivia Von Schrader and Frederick William Von Schrader, III, children of Frederick William Von Schrader, II, Mary Eloise Von Schrader, daughter of Alleyne Von Schrader, and Eloise Hoblitzelle, daughter of Katherine Wellman, in equal parts, share and share alike, until they attain the age of twenty-one years respectively.

"After said beneficiaries shall respectively attain the age of twenty-one years and until they attain the age of forty years, said trustee shall pay said net income to them. In the event that any of said beneficiaries shall die without leaving surviving him or her any lawfully natural born children, then upon the death of said beneficiary so dying, said trustee shall pay his or her share of said net income to the other beneficiaries mentioned above in this paragraph of my said will and in paragraph (a) above of this will, in equal parts, share and share alike. In the event, however, that any of said beneficiaries shall die leaving surviving lawfully natural born children, then said trustee shall expend the share of the beneficiary so dying for the support and maintenance of such children of such deceased beneficiary, paying the same out at least once each quarter, until the youngest of said beneficiaries named in paragraph (b) of this will surviving shall attain the age of forty years.

"The payments of said net income herein directed to be made by said trustee other than those directed to be made to my said cousin, Nellie Clark, shall be made by him for or to said beneficiaries at least once each quarter.

"(c) As said Margrate Olivia Von Schrader, Frederick William Von Schrader, III, Mary Eloise Von Schrader, Eloise Hoblitzelle and Mary Arabella Frances Bassett shall attain the age of forty

years respectively, said trustee shall pay, deliver, assign and transfer to each of them, respectively, one-fifth of the property in said trust estate to become his or her property absolutely and free from this trust. If, however, any of said beneficiaries shall die before attaining the age of forty years and leave surviving him or her no lawfully natural born children, then the share of the beneficiary so dying in said trust property, which the beneficiary so dying would have taken had she or he lived, shall be paid, assigned, set over and transferred to the surviving beneficiaries in equal parts, share and share alike, with her or his share of said trust property. If, however, any of said beneficiaries shall die before attaining the age of forty years and shall leave surviving her or him lawfully natural born children, then said trustee shall assign, transfer, convey and set over to said children in equal parts, share and share alike, the share in said trust property which their parent would have taken had she or he lived to attain the age of forty years, when the youngest of the beneficiaries above named, surviving, shall attain the age of forty years.

"No title in the trust estate hereby created or in the income accruing therefrom or in its accumulation shall vest in any beneficiary and no beneficiary shall have the right or power to transfer, assign, anticipate or encumber his or her interest in said estate or income therefrom prior to the actual distribution thereof by said trustee to said beneficiary, and neither the income nor the principal shall be liable in any manner in the possession of the trustee for the debts, contracts or engagements of any of said beneficiaries. . . ."

It is further alleged that Eloise Von Schrader, the testatrix, was a daughter of Frederick Von Schrader, deceased; that he died October 19, 1872; that by his will, he devised and bequeathed the residue of his estate to his wife, Olivia, the mother of Eloise, for life, and devised a one-seventh portion of said residue, after the death of the mother, for the use and benefit of his daughter Eloise. It is alleged that by the will of Frederick Von Schrader, the father, it was provided that the trustee of that will should pay to Eloise Von Schrader, the net annual income of the share and portion devised for her use during her life, and after her death to "convey the share or portion so devised for the use of said daughter to such person or persons as she may by will or testamentary disposition or appointment in the nature of a last will direct and appoint, and in default of any such will or testamentary disposition or appointment to convey the said share to the right heirs of such daughter in absolute property."

It is further alleged that "as set forth in the will of said Eloise Von Schrader there was at the time of her death, a fund valued at approximately nine thousand dollars, to-wit: $9123.79, in the

hands of St. Louis Union Trust Company as trustee under the said will of Frederick Von Schrader, as to which fund the said Eloise Von Schrader had a power of appointment pursuant to the terms of her father's will as above stated."

It is further alleged that at the time of the death of Frederick Von Schrader in 1872, defendants Mary Arabella Frances Bassett, Margrate Olivia Von Schrader, Frederick William Von Schrader, III, Mary Eloise Von Schrader and Eloise Hoblitzelle were unborn; that Mary Arabella Frances Bassett was born in 1919; that Margrate Olivia Von Schrader was born in 1915; and that Eloise Hoblitzelle was born in 1913. The age or date of birth of Frederick William Von Schrader, III, and Mary Eloise Von Schrader is not alleged, except that they were minors.

It is further alleged "that the attempted exercise of said power of appointment by appointing said fund in such a way that the same might not vest within the lives in being at the time the death of said Frederick Von Schrader and twenty-one years thereafter, is void and ineffective and that consequently, by the terms of said will, the right to said fund vested absolutely at the death of said Eloise Von Schrader in plaintiffs, the St. Louis Union Trust Company as executor of the last will and testament of George M. Von Schrader, and in defendants, Julia Hodgson and Otto U. Von Schrader each as to one-fourth (1/4th) thereof, and in defendants, Henrietta Von Schrader Bassett, Frederick William Von Schrader, II, and Alleyne Von Schrader each as to one-twelfth (1/12th) thereof, and said fund could not become part of the trust which said Eloise Von Schrader by her will attempted to create and as she by the terms of her said will contemplated."

After pleading as above set out, then follows in the first count of the amended petition a description of the real property sought to be partitioned and certain allegations as to acts of defendant, Lubke, the executor and trustee under the will of testatrix, which acts are not involved here. Prayer of the first count is that the court declare that the trust attempted to be created by the will of testatrix, Eloise Von Schrader, is void, and to declare an intestacy as to the residuary estate and to determine the rights, title and interest of the parties plaintiff and defendant to the real property described and to the proceeds of real property sold by the executor and trustee, and that partition be had according to the respective interests, etc.

The second count of the amended petition concerns the personal estate of the testatrix, Eloise Von Schrader, and alleges by reference all necessary facts in count one, and then alleges that the personal estate as per inventory consisted of:

Accounts .................................$  524.20
Cash  .......................................   36.06
Trust Fund ...............................  9,000.00
Goods and Chattels as per Appraisal ...........   631.85

The prayer of the second count is similar in effect as that of the first count.

By the residuary clause the testatrix disposed of her individual estate and the trust fund derived from the estate of her father, of which fund, she had, under her father's will, power of appointment or disposition by will only.  We will separately rule as to the individual estate and the trust fund.

Paragraph (a) of the residuary clause directs the trustee, defendant Lubke, after paying Nellie Clark $25 per month out of the income of the estate, to pay, at least quarterly, one-fifth of the remaining income to Henrietta Von Schrader Bassett, a niece, for life, and upon her death, to pay said income to her daughter, Mary Arabella Frances Bassett, until the daughter attains the age of forty years, and if the daughter has not attained the age of twenty-one at the death of her mother, then the trustee is directed to use said income for the support and education of the daughter until she is twenty-one.  Should the daughter die before the death of the mother or before reaching the age of forty, and leave surviving no lawfully natural born children, then upon the death of her mother or her death, if before she reaches forty, the trustee is directed to pay the income theretofore paid to her mother or to her, to the beneficiaries named in paragraph (b) in equal parts, share and share alike.  It is further provided in paragraph (a) that if Mary Arabella Frances Bassett should die before reaching forty years of age and leave surviving lawfully natural born children, then the trustee is directed to use "said part of said income" for the support and education of said children "after her death or the death of her said mother until the youngest of the beneficiaries named" in paragraph (b) shall attain the age of forty years.

Paragraph (b) directs that the other four-fifths of said net income shall be used by the trustee, at least quarterly, for the support and education of defendants Margrate Olivia Von Schrader, Frederick William Von Schrader, III, Mary Eloise Von Schrader and Eloise Hoblitzelle, in equal parts, share and share alike, until they each attain the age of twenty-one years, and as they attain the age of twenty-one and until they attain the age of forty years, the trustee is directed to pay said income to them.  Paragraph (b) further provides that in the event any of the four named in paragraph (b) die without leaving surviving him or her any lawfully natural born children, the trustee is directed to pay his or her share "to the other beneficiaries mentioned above in this paragraph of my said will and

in paragraph (a) above of this will in equal parts, share and share alike." It is further provided in paragraph (b) that in the event any of the four named in said paragraph die leaving surviving lawfully natural born children, the trustee is directed to use, at least quarterly, the share of the beneficiary so dying for the support of the children of such deceased beneficiary, "until the youngest of said beneficiaries named in paragraph (b) of this will surviving shall attain the age of forty years."

Paragraph (c) provides that *as* Margrate Olivia Von Schrader, Frederick William Von Schrader, III, Mary Eloise Von Schrader, Eloise Hoblitzelle and Mary Arabella Frances Bassett attain the age of forty, the trustee shall pay and deliver to each of them "one-fifth of the property in said trust estate, to become his or her property absolutely and free from this trust." It is further provided in paragraph (c) that if any of said beneficiaries shall die before attaining the age of forty and leave surviving him or her no lawfully natural born children, then the share of the beneficiary so dying shall be paid "to the surviving beneficiaries in equal parts, share and share alike;" but if "any of said beneficiaries" shall die before attaining the age of forty years and shall leave surviving her or him lawfully natural born children, then the trustee "shall assign, transfer, convey and set over to said children in equal parts, share and share alike, the share in the trust property which their parent would have taken had she or he lived to attain the age of forty, *when the youngest of the beneficiaries above named, surviving, shall attain the age of forty years.*" (Italics ours.)

In the residuary clause and a part of paragraph (c) is what is commonly called a spendthrift paragraph which provides as appears, supra, that *"no title* in the trust estate hereby created or in the income accruing therefrom or in its accumulation *shall vest in any beneficiary, and no beneficiary* shall have the right or power to transfer, assign, anticipate or encumber his or her interest in said estate or income therefrom, prior to the *actual distribution* thereof by said trustee to said beneficiary." (Italics ours.)

Plaintiffs and those defendants agreeing with them contend that the term beneficiary as used in the residuary clause has reference to any possible beneficiary, though not designated by name, which would include the possible children of the five named minor beneficiaries, Mary Arabella Frances Bassett, Margrate Olivia Von Schrader and Eloise Hoblitzelle, Frederick William Von Schrader, III, and Mary Eloise Von Schrader. Under such construction plaintiffs and agreeing defendants say that an estate that *might* pass under the will to these possible children might be postponed so that it would not vest within the period prescribed by the rule against perpetuities. Also plaintiffs and agreeing defendants say that the will

cannot be construed to mean that upon the death of Mary Arabella Frances Bassett, for example, her mother having previously died, and Mary Arabella dying before attaining the age of forty and leaving a child, that such child would immediately become vested with the equitable estate of its share.

■ Does the residuary clause violate the rule against perpetuities? is the main question. The rule against perpetuities is that no interest within its scope is good unless it must vest, if at all, not later than twenty-one years after some life or lives in being at the creation of the interest, to which period is added the period of gestation, if gestation exists. [48 C. J. 937; Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217, l. c. 220, 9 A. L. R. 107; Loud v. St. Louis Union Trust Co., 298 Mo. 148, l. c. 171, 249 S. W. 629; Shepperd v. Fisher, 206 Mo. 208, l. c. 239, 103 S. W. 989.]

In the main question and decisive of it are involved other questions as follows: (1) Are the possible issue of the named minor beneficiaries in paragraphs (a), (b) and (c) of the residuary clause, beneficiaries in the same sense as those named, and if so, then in the event of the death of all of the *named* minor beneficiaries in paragraphs (a), (b), and (c), before the youngest of them attains the age of forty years, would the possible issue of such named minor beneficiaries be vested with any interest, legal or equitable, in the trust estate prior to the time when the youngest of the named minor beneficiaries would have attained the age of forty years, had the youngest so survived? (2) Should the time as affects the power of appointment as to the disposition of the $9,123.79 trust fund, be reckoned from the time of the creation of the power of appointment or from the time of exercising it? And another question is raised in the brief of plaintiffs, viz.: Is the plan of disposition of the individual estate of the testatrix, and the trust fund, derived from the estate of her father, one comprehensive plan and inseparable, so that if such disposition is void in part because of the rule against perpetuities, it is void *in toto?*

■ It is the contention of contesting defendants that the term *beneficiary,* as used in the spendthrift paragraph, has reference only to the named minor beneficiaries. A "beneficiary" is "the recipient of another's bounty; one who receives a benefit or advantage; one for whose benefit a trust is created." [7 C. J. 1133.] In the construction of a will or deed creating or attempting to create an interest or estate which violates the rule against perpetuities, such instrument should be construed as all other instruments are construed. The real intention of the maker as gathered from the four corners of the instrument is "the guiding star to its interpretation," and words should be given their plain and ordinary meaning, unless the intention appears clearly to the contrary. [See 567, R. S.

1929; Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S. W. 629; Buxton v. Kroeger, 219 Mo. 224, l. c. 246, 117 S. W. 1147; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S. W. 261; Palmer v. French, 326 Mo. 710, 32 S. W. (2d) 591.]

The spendthrift paragraph provides that *no title* in the trust estate created or in the income or accumulations therefrom *shall vest* in any beneficiary "prior to the actual distribution thereof by said trustee to said beneficiary;" and that "no beneficiary shall have the right or power to transfer, assign, anticipate or encumber his or her interest in said estate or income therefrom prior to the actual distribution thereof by said trustee to said beneficiary." Also, the spendthrift paragraph directs that "neither the income nor the principal shall be liable in any manner in the possession of the trustee for the debts, contracts or engagements of any of said beneficiaries." It seems clear to us that testatrix intended to create a spendthrift trust in favor, not only of the five named minor beneficiaries in paragraph (c), but also in favor of the possible children of these five who might die, leaving children, before the lapse of time provided for the "actual distribution thereof by said trustee" which was, as we construe, when the youngest of the five named minor beneficiaries "shall attain the age of forty years." It is equally clear that testatrix, by the spendthrift paragraph, intended the property she was devising and bequeathing, both the principal and the income, to be exempt from the debts and liabilities of her beneficiaries, named and unnamed in paragraph (c), until the lapse of time fixed by her, and this could only be done by preventing the title from vesting during such period of time. [Loud v. St. Louis Union Trust Co., 298 Mo. 148, l. c. 174, 249 S. W. 629, l. c. 636, supra.]. Reading from the four corners it would be unreasonable to say that testatrix intended to place the property she was disposing of beyond the reach of creditors of the named beneficiaries in paragraph (c) and beyond their power to sell, encumber or anticipate, until the youngest of them should attain the age of forty years, and also say that she intended to leave the property so that their possible issue would be free from the spendthrift paragraph immediately upon the death of the parent. If such were intended, then a child of a deceased named beneficiary in paragraph (c) might be vested with its parent's share before other surviving named beneficiaries would be vested with theirs. Also, it will be observed that testatrix provided in paragragh (c) that if any of said beneficiaries, referring to those named in said paragraph, shall die before attaining the age of forty years and leave surviving lawfully natural born children, then the trustee "shall assign, transfer, convey and set over to said children in equal parts, share and share alike, the share in said trust property which their parent would have taken had she or he lived to attain

the age of forty years, when the youngest of the beneficiaries above named in paragraph (c) surviving, shall attain the age of forty years.'' Language to the same effect appears in paragraphs (a) and (b). Such language, considered with the language of the spendthrift paragraph, impels the conclusion, it seems to us, that the testatrix did not intend that the unnamed beneficiaries would be vested with any interest, legal or equitable, prior to the time that the youngest of the named beneficiaries, in paragraph (c) would, if living, attain the age of forty years. It might be argued that testatrix intended that the contingent interest of the unnamed beneficiaries would vest when the youngest of the four named in paragraph (b) reached the age of forty years or would reach that age if surviving, as might be construed from paragraphs (a) and (b). But from paragraph (c) and from the whole of the residuary clause, we reached the conclusion, as stated, as to when testatrix intended the contingent interest or estate of the unnamed beneficiaries would vest. It appears from the petition that Mary Arabella Frances Basset is younger than Margrate Olivia Von Schrader and Eloise Hoblitzelle, but it does not appear whether she is younger than Frederick William Von Schrader, III, and Mary Eloise Von Schrader. But so far as concerns the rule against perpetuities, the result would be the same under the facts alleged.

Loud v. St. Louis Union Trust Co., supra, was to have a trust created by will declared void on the ground that it violated the rule against perpetuities. The will in question was that of Mary Jane Blanke who died in St. Louis, Missouri, May 12, 1914, owning extensive properties. The will was executed May 25, 1910. The testatrix left surviving as her only heir, a daughter. At the time of the death of testatrix, this daughter had three sons, aged twenty-six, twenty-four and eighteen years. Testatrix, in her will, made some specific bequests and devises to her daughter and grandsons, and then conveyed the residue of her estate to a trustee. The trustee was given power to sell, invest, reinvest and to purchase property; to pay out of the income of the estate all expenses necessary for the preservation of the estate; to pay the daughter $2000 per year in quarterly installments, and to increase this if the trustee desired. After the death of the daughter, the trustee was directed to hold the trust estate for the equal benefit of the grandsons and from time to time, pay them such sums as the trustee deemed reasonable for their maintenance and education during minority. It was provided that if any other child was born to the daughter that such child should be treated the same as the three grandsons named and be entitled to the same share of the income and ultimately to the same share of the principal. After each of the grandchildren reached the age of twenty-one the trustee was directed to pay from time to time

to each of them, from the net revenue an amount not to exceed the share of each in the net income, as the trustee considered reasonable. It was provided that if any of the grandsons desired to go in business while between twenty-five and thirty-five years of age, and could satisfy the trustee of reasonable prospects of success, the trustee was authorized to advance $10,000 to such as so entered business. It was provided that when each of such grandchildren reached the age of thirty-five years, "he shall receive out and out, freed from the conditions of said trust, one-half of his share of the principal of said trust fund; and when he shall have reached the age of forty years, the remaining one-half of the principal of said trust estate shall be turned over to him outright."

The Blanke will in the fifth clause provided: "If any of my grandchildren, before receiving all of his share of the principal of said trust estate, shall die leaving issue then surviving, the share of such deceased grandchild shall be held by said trustee for the benefit of such issue, in equal parts, until they, respectively, shall reach the age of twenty-one years, when their respective shares of the principal shall be paid over to them outright.

"If any of such grandchild shall die without leaving issue surviving him, his share shall be equally divided, *per stirpes*, among the other surviving grandchildren and the issue of deceased grandchildren, if any: Provided that the shares shall be paid over to such grandchildren and the issue of deceased grandchildren at once or held by the trustee for their benefit and subject to all the conditions hereof, according to their respective ages, as hereinabove stated and fixed for the purpose of determining the distribution of principal to them, respectively.

"Sixth. The provisions hereinabove made for my said daughter and grandchildren shall not be liable, respectively, for any of their debts or to be used or taken under any writ or process issuing out of any court of law or equity in aid of any creditor or for the enforcement of any decree of judgment against any of them; and neither my said daughter nor any of my said grandchildren shall have the right to give, sell, grant, assign, convey, pledge, hypothecate, or otherwise alien, encumber or anticipate the income hereinabove provided for them, or any of them or the principal of said trust estate, or any installment of income; and any act on the part of any such beneficiary attempting to so sell, give, grant, assign, convey, pledge, hypothecate or otherwise alien, encumber or anticipate the same shall be void and of no effect. *And no right or title to said income or other provision for any such beneficiary shall vest in him or her until the same shall have been actually paid into his or her hands.*" (Italics ours.)

It was held in the Loud case that the attempted disposition there made violated the rule against perpetuities. The opinion was by Judge WOODSON and at length and ably considers the rule against perpetuities, its application, etc., and we refer to the Loud case for a more extended consideration of this rule than is necessary here. The Sixth clause of the will involved in the Loud case above set out was the spendthrift clause and we call attention to the similarity of the language in the Blanke will, last above italicized, as to when title would vest and the language used in the spendthrift paragraph in the instant case. In the instant case the language is: *"No title in the trust estate hereby created or in the income accruing therefrom or in its accumulation shall vest in any beneficiary, . . . prior to the actual distribution thereof by said trustee to said beneficiary. . . ."* (Italics ours.)

In the Loud case, after setting out the language of the spendthrift clause as to when title would vest, the court said: **"This language found in the sixth paragraph of the will should be read in connection with the remainder thereof, and when so read in the light of what the testatrix was trying to accomplish by that paragraph, it is clear that she was trying to create a spendthrift trust in favor of her daughter and her grandchildren, by exempting the property, both the** *corpus* **and the income therefrom, from their debts and liabilities, and to withhold their power of disposing of the same, which in law could only be done by preventing the title in and to the property from vesting in the legatees. To foreclose all doubt upon that subject she clinched the matter by adding that their right and title to the property should not vest in any of them until the same had actually been placed into their hands. This shows that it was not her purpose in using that language to fix the time when they could enjoy the property, but the time when the title thereto should vest in them, and thereby withhold their power of alienation, and exempt it from seizure and sale under execution in satisfaction of their debts or other obligations."**

And we so rule in the instant case. By the language used in the spendthrift paragraph testatrix, Eloise Von Schrader, intended, in our opinion, that no title or interest, legal or equitable, in the principal or income of the trust estate would vest in her beneficiaries, named and unnamed in paragraph (c), until the youngest of the named in said paragraph reached the age of forty years or would reach that age if surviving. And as in the Loud case we rule that it was not the intention of the testatrix to fix the time when her beneficiaries, named and unnamed in paragraph (c), could enjoy the property, but the time when the title thereto should vest in them.

The rule against perpetuities is concerned only with the time within which the title vests, and has nothing to do with the post-

ponement of the enjoyment of the estate. A vested interest does not necessarily include a right to the possession and if an interest is vested it is not subject to the rule, however remote the time it may come into possession. [12 R. C. L. 290; Plummer v. Brown, 315 Mo. 627, 287 S. W. 316; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 1. c. 695, 197 S. W. 261; Loud v. St. Louis Union Trust Co., supra; Greenleaf v. Greenleaf, 332 Mo. 402, 58 S. W. (2d) 448; 48 C. J. 982; Landers Inv. Co. v. Brown, 300 Mo. 348, 254 S. W. 14, 30 A. L. R. 908; Gates v. Seibert, 157 Mo. 254, 57 S. W. 1065; Gray v. Whittemore (Mass.), 78 N. E. 422, 10 L. R. A. 1143; 1 Tiffany's Real Property (2 Ed.), p. 591 et seq.]

█ The rule against perpetuities is not a rule of construction, but a rule of property, yet "if there are two possible constructions of a testament, one which would permit effect being given to the whole will and the other which would result in defeating the will, "preference will be accorded to the construction which will uphold the will." [21 R. C. L. 294-5; Loud v. St. Louis Union Trust Co., supra; Davis v. Rossi, 326 Mo. 911, 34 S. W. (2d) 8; Plummer v. Brown, supra.] And the rule is applicable alike to both real and personal property. Plummer v. Brown, supra; 48 Corpus Juris, 950, and to both legal and equitable estates. [Loud v. St. Louis Union Trust Co., supra.] The interest or estate *must vest*, if at all, within the period fixed by the rule, beyond a possibility. A probability that the interest or estate *may vest* is not sufficient. [Loud v. St. Louis Union Trust Co., supra; Shepperd v. Fisher, 206 Mo. 208, 1. c. 239, 103 S. W. 989.] In the case last cited the court quoted, with approval, Rice on Modern Law of Real Property, page 762, as follows: "In the application of this rule, in order to test the legality of a limitation, it is not sufficient that it be capable of taking effect within the prescribed period; it must be so framed as *ex necessitate* to take effect, if at all, within that time. If, therefore, a limitation is made to depend upon an event which may happen immediately after the death of the testator, but which may not occur until after the lapse of the prescribed period, the limitation is void. The object of the rule is to prevent any limitation which may restrain the alienation of property beyond the precise period within which it must by law take effect. . . . The true test, by which to ascertain whether a limitation over is void for remoteness, is very simple. It does not depend upon the character or nature of the contingency or event upon which it is to take effect. These may be varied to any extent. But it turns on the single question whether the prescribed contingency or event may not arise until after the time allowed by law, within which the gift over must take effect."

It is alleged as above stated that defendants, Mary Arabella Frances Bassett was born in 1919, Margrate Olivia Von Schrader in 1915, and

Eloise Hoblitzelle in 1913. When defendants Frederick William Von Schrader, III, and Mary Eloise Von Schrader were born does not appear in the petition, but it is alleged that they were minors. Testatrix, Eloise Von Schrader, died May 17, 1928. Therefore, at the time of the death of testatrix, defendants Mary Arabella Frances Bassett, Margrate Olivia Von Schrader and Eloise Hoblitzelle, were, respectively nine, thirteen and fifteen years of age. The question of remoteness in the application of the rule against perpetuities is to be determined by reference to possible and not actual events. [48 C. J. 943.] ■ Applying this rule and under our construction that the unborn children of the named beneficiaries in paragraph (c) are beneficiaries in the same sense as those named and that by reason of the spendthrift paragraph no interest or estate vested in the beneficiaries until the youngest of the named beneficiaries in paragraph (c) attained the age of forty years or would have had she survived, it was possible at the time of the death of the testatrix that Eloise Hoblitzelle, who was then fifteen years of age, could have died by 1931, leaving surviving lawfully born issue. It was possible that by 1932, all the beneficiaries named in paragraphs (a) and (b) of the residuary clause, except Mary Arabella Frances Bassett, could have died. In the possible situation stated, Mary Arabella Frances Bassett would be the only survivor of the five named beneficiaries in paragraph (c). It was possible for Mary Arabella Frances Bassett to have died in 1933, when she would have been fourteen years of age. In the situation stated and under our construction, the issue or child of Eloise Hoblitzelle would not, under the will, be *vested* with the interest or estate going to such child until 1959, when Mary Arabella Frances Bassett would have attained the age of forty years had she survived, or twenty-six years after the last life in being. Other illustrations might be given demonstrating that the residuary clause violates the rule against perpetuities, and counsel for plaintiffs in their brief give an illustration as follows: ''At the time of the hearing on demurrers Margrate Olivia Von Schrader was about sixteen years of age and Eloise Hoblitzelle about eighteen. It was possible that within two years thereafter Eloise Hoblitzelle should die, leaving surviving her a lawful child. This certainly did not assume an impossible event. Suppose further that within the next two years the other beneficiaries named in clauses (a) and (b) other than Margrate Olivia Von Schrader had died. This was not an impossible assumption. Suppose, further, that Margrate Olivia Von Schrader, who would then be the survivor of the five *named* beneficiaries, should die at any time thereafter before becoming nineteen years of age. For this purpose, let us assume that she survives the assumed death of the others less than a year. She would at that time be about eighteen years of age. If

she should die at that time the child of Eloise Hoblitzelle would have to wait twenty-two years before the title to the trust estate could vest, even if it is assumed that it would so at that time."

Counsel for contesting defendants in their brief say of the illustration given in brief of plaintiffs: "Of course none of this has happened and it could no longer happen, but the plaintiff is within his rights in making such an assumption, *as it is not what has happened, but what might by possibility have happened, that will determine the violation or nonviolation of the rule.* This hypothesis is bottomed on the theory that the interest of the hypothetical child will not vest until the time when the last surviving beneficiary, whom he assumes to be Margrate Olivia Von Schrader, will have reached the age of forty years if she had lived so long." (Italics ours.)

Contesting defendants do not deny that the residuary clause violates the rule against perpetuities if plaintiffs' theory of construction is correct. It is our conclusion that the residuary clause, under the facts pleaded, violates the rule and that as to the individual estate of the testatrix the residuary clause is void.

We shall now deal with the trust fund derived from the estate of the father of testatrix. It is pleaded, as above shown, that the trustee of the trust estate created by the will of the father of testatrix was directed to pay to testatrix for life, the net annual income therefrom, and after her death to convey the fund "to such person or persons as she may by will or testamentary disposition or appointment in the nature of a last will direct and appoint, and in default of such will or testamentary disposition or appointment, to convey the said share to the right heirs of such daughter in absolute property."

Plaintiffs and agreeing defendants contend that the power of appointment given testatrix should be reckoned from the date of the power and not from the date of its execution. Contesting defendants contend contra, that is, that this time should be reckoned from the date of exercising the power and not from the date of its creation. Gray's Rule Against Perpetuities (3 Ed.), section 950, discussing this question states: "In judging of the remoteness of an appointment, the time must be calculated from the date of the creation of the power and not from the date of its execution. The reason of this is obvious: if a limitation would be bad, as too remote, it cannot be made good by delegating the power to make it to some one else. If what is given to the donee of a power is an authority to act for the settlor or testator, then the appointment by the donee must be considered as an appointment by the settlor or testator himself. Now to this there is an apparent exception, which comes above in this wise: Sometimes what is in form an authority from a testator or

settlor to make a limitation is in substance, not an authority to make a limitation, but a limitation to the donee himself, a gift to him in fee. Such is the case when a general power is given to A to appoint by deed. A can there appoint to himself. When this is the case, A, the nominal donee, instead of going through the form of appointing to himself, may so far as any question of remoteness is concerned, deal with the property as if he had gone through this form, and may treat it as he could any property of his own. That is, when A makes what purports to be an appointment under such a power, what he really does is to make an appointment to himself, and then to grant his own property to the person named as appointee.''

Testatrix was given general power to appoint by will only, which as reasoned by Gray would be the same in effect as a special power. In Section 954, Gray gives an illustration as follows: ''Suppose in the first place A gives property to B for life, with a power to appoint by will to B's issue (a special power), and B appoints to his son C, who was born after A's death, for life, and on C's death to his issue living at his death. The gift to C's issue is unquestionably bad, as it is to vest on the death of a person born after A's death.''

Then, in Section 953, Gray says: ''There is no dispute that the exception does not extend to special powers. Now, as a practical matter, from the point of view of the Rule against Perpetuities, there is no difference between a testamentary general power and a special power.''

In 48 Corpus Juris, page 979, section 65, it is stated: ''An appointment of property made in the exercise of a power other than a general power of appointment exercisable by deed is void unless the interest or estate appointed must necessarily become vested in the appointee within the period prescribed by the rule against perpetuities, reckoned from the date of the creation of the power, and not from the date of its exercise. This is upon the principle that the vesting of property is in effect the act of the donor of the power and that he cannot confer upon another the right to do that which he himself could not do. Accordingly, it has many times been said that limitations of property made in the exercise of a power of appointment are to be treated, so far as concerns questions of remoteness, as if they had been written into the instrument by which the power was created in place of the power itself.''

As supporting the text quoted, Corpus Juris cites the following authorities among others: Bartlett v. Sears, 81 Conn. 34, 70 Atl. 33; Hawkins v. Ghent, 154 Md. 261, 140 Atl. 212; Gambrill v. Gambrill, 122 Md. 563, 89 Atl. 1094; Minot v. Paine, 230 Mass. 514, 120 N. E. 167, 1 A. L. R. 365; Bundy v. United States Trust Co., 257 Mass. 72, 153 N. E. 337; Greenough v. Osgood, 235 Mass. 235, 126

N. E. 461; Dexter v. Atty. Gen., 224 Mass. 215, 112 N. E. 946; Ewalt v. Davenhill, 257 Pa. 385, 101 Atl. 756; Cox v. Dickson, 256 Pa. 510, 100 Atl. 947; Lawrence's Est., 136 Pa. 354, 20 Atl. 521, 20 Am. St. Rep. 925, 11 L. R. A. 85; In re Boyd's Est., 199 Pa. 487, 49 Atl. 297. The cases cited in Corpus Juris holding contra are Rous v. Jackson (Eng.), 29 Ch. D. 521; In re Flower (Eng.), 55 L. J. Ch. 200; Miller v. Douglass (Wis.), 213 N. W. 320.

In 21 Ruling Case Law, page 302, section 27, it is stated: "The rule against perpetuities applies to powers, and every power is void the direct purpose of which is to create a perpetuity, yet this rule is applied differently in regard to general and to special powers of appointment. A general power is where the donee of the power can make the appointment either by deed or by will without restriction. Since he may appoint to himself as well as in favor of any other person he is practically the owner and the validity of the appointment under the rule against perpetuities is gauged by the remoteness measured not from the creation of the power but from the time of its exercise. A power which is not unrestricted is designated as a special power. Thus a power of appointment to be exercised by will only is a special power, and the question whether or not the estate created by the appointment is too remote, under the rule against perpetuities, is to be determined with reference to the time of the creation of the power, and not as to that of its execution."

That there is a contrary view, than as above stated, on the question in hand is conceded and contesting defendants vigorously urge that the contrary view is the correct one. This contrary view is considered at length in an article in 26 Harvard Law Review, 64, by Professor Kales, author of Kales' Future Interests. Gray, author of the text above quoted, had an article in 26 Harvard Law Review, 720, in answer or reply to the article by Kales and the sections above quoted from Gray's third edition are as appear in his article in the Harvard Law Review. Manifestly, within the scope of an opinion of reasonable length we cannot enter upon an analysis of the authorities supporting these respective views. It is sufficient here to say that the better reason and the great weight of authority supports the views which we have quoted from Gray, Corpus Juris and Ruling Case Law, supra. Reaching this conclusion, we hold that the time as affects the power of appointment as to the trust fund is to be reckoned from the time of its creation by the father of testatrix in 1872, and not from the time of its execution by her in 1928.

Neither of the five minor beneficiaries named in paragraphs (a), (b) and (c) of the residuary clause were born in 1872 at the time of the creation of the power of appointment, and reckoning this power from the time of its creation and considering when the respective estates of these minors would vest, under our construction, in dealing

with the individual estate, it is clear that the residuary clause as to the disposition of the trust fund violates the rule against perpetuities. We reach this conclusion for the same reasons given as to the individual estate as well as for the reason that reckoning the power of appointment from the date of its creation, the title to the trust fund estate as appointed by testatrix could not vest in the beneficiaries thereof within the life of Eloise Von Schrader and twenty-one years thereafter, plus the period of gestation, if such existed. As we have construed the power of appointment, this power created by the father of testatrix in 1872, measured by the rule against perpetuities, required that testatrix make such disposition of the trust fund by her will as would vest the title thereto in those to whom she bequeathed within twenty-one years after her death, plus the period of gestation, if such existed, since *her life* was *the life* in being, in the meaning of the rule, at the time of the creation of the power. And such vesting testatrix by the spendthrift paragraph of her will, prohibited.

In view of our holding as to the individual estate and the trust fund as affected by the rule against perpetuities, the question as to whether or not the plan of disposition by testatrix of her individual estate and the trust fund is separable or inseparable, does not arise.

Plaintiffs' petition stated a cause of action and it was error to sustain the demurrers. The judgment sustaining the demurrers and dismissing the petition should be reversed and the cause remanded with direction to set aside the order sustaining the demurrers and dismissing the petition and to overrule the demurrers and reinstate the petition, and it is so ordered. *Coles, J.,* not sitting.